Laramobe, Judge,
dissenting:
I respectfully dissent for the same reasons as those set forth in my dissenting opinion in the case of John A. Hadden, Trustee v. United States, No. 50038, this day decided.
Jones, Chief Judge, joins in the foregoing dissent.
FINDINGS OF FACT
The court, having considered the evidence, the stipulation of facts entered into between the parties, and the briefs and argument of counsel, makes findings of fact as follows:
FINDINGS RELATING TO CLAIM OF NATIONAL SURETY COEPOEATION,
NO. 419-52
1. The plaintiff, National Surety Corporation, is a corporation duly organized under the laws of the State of New York and is authorized to carry on the business of Surety in the State of New York, all the States of the United States and the District of Columbia.
2. On or about September 1, 1950, Thomas Bryan and Associates, Inc., hereinafter referred to as the Contractor, duly entered into a contract with the United States of America, through the United States Atomic Energy Commission, hereinafter called the Government, for the construction of Group 138, Buildings and Facilities, TA-16, Project D, Los Alamos, New Mexico, known as Contract No. AT *734 (29-l)-994 at an estimated price of $673,860, the price of which was adjusted by modification to $609,618.73.
3. At or about the time of the execution of said contract and in compliance with the Miller Act, 40 U. S. C. 270a, c. 642, Sec 1, 49 Stat. 793, the Contractor, as Principal, and the plaintiff, as Surety, executed two bonds to the Government, each in the penal sum of $336,930, one of said bonds to secure the performance of said contract, and the other of said bonds to secure the payment to all persons supplying labor and materials in the prosecution of the work provided for in said contract.
4. In consideration of premium in the sum of $6,096.18 and indemnity agreement dated on or about May -29, 1950, and written application dated on or about September 1, 1950, the plaintiff executed the aforesaid bonds, and under said application and indemnity agrément the Contractor agreed in part, as follows: •- .
If any such bond be given in connection with a contract, the Surety is hereby authorized, but not required, (a) to consent to any change in the contract or in the plans and specifications relating thereto; (b) from time to time to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans shall be conclusively presumed to be a loss hereunder; (c) in event of the abandonment, forfeiture or breach of the contract or the breach of any bond given for the performance thereof or in connection therewith or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the In-demnitors, to complete the contract or cause the same to be completed or to consent to the completion thereof, and to take any other action which the Surety, in its sole discretion, may deem appropriate; and the Indemni-tors hereby assign, transfer and set over to the Surety (to be effective as of the date of such bond, but only in the event of abandonment, forfeiture, breach, failure, neglect or refusal, as aforesaid) all of their rights under the contract, including their right, title and interest in and to (1) all sub-contracts let in connection therewith, (2) all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere *735 for tbe purposes of the contract, including all materials ordered for the contract, and (3) any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Surety to endorse in the name of the payee and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum and to disburse the proceeds thereof.
5. The Contractor proceeded with the work as provided by the contract and prosecuted the same until on or about March 3, 1951, when the Government accepted the contract as completed.
6. The Government made payment to the Contractor in the sum of $501,617.26.
7. The Contractor was indebted to the Government in the sum of $7,083.13 arising out of the Contractor’s operations under Contract No. AT (29-1)-994 as follows: $4,780.77 for miscellaneous small claims, and $2,302.36 cost of replacing certain vitrified clay pipe.
8. Thomas Bryan and Associates, Inc., the Contractor, is indebted to the Government in the amount of $45,429.58 for withholding taxes for the fourth quarter of 1950 and Federal Unemployment Taxes for the years 1949 and 1950, including interest to the date of filing of the bankruptcy petition, to wit, February 24, 1951. Check No. 825 payable to the Collector of Internal Revenue, drawn on The First National Bank in Houston, in the amount of $42,106.26, was issued on January 31,1951, but was returned on account of insufficient funds. The records of the Contractor showing the breakdown of said amount is appended to the stipulation of facts as Exhibit D.
9. Creditors of the Contractor who had furnished labor and materials in connection with the performance of the said contract were unpaid for their work and materials supplied in the prosecution of the contract work in the sum of $295,255.64 and made demand upon the plaintiff for the payment thereof and that by reason thereof the plaintiff was compelled to accept liability therefor and pay in accordance with its obligation of its said payment bond, sums aggregating $295,255.64 to the creditors of the Contractor in set *736 tlement of claims for labor and materials supplied to the Contractor in the prosecution of the work provided for in said contract, no part of which sum has been refunded or paid to the plaintiff by the Contractor or anyone else.
10. The First National Bank in Houston, of Houston, Texas, third party defendant in this case, also makes claim to the unexpended balance on said contract upon an assignment to it from the Contractor of moneys due or to become due under the said contract executed on or about January 21, 1951, under the Assignment of Claims Act, 41 XT. S. C. 15, 61 Stat. 501, 65 Stat. 41. A notice of said assignment was received by the plaintiff and was acknowledged as follows:
Eeceipt is hereby acknowledged of the above notice and a copy of the above mentioned instrument of assignment. These were received at 9 A. M. on February 8,1951 subject to a complete reservation of all our rights.
11. No action on the claim asserted herein has been taken by Congress or by any Department of the Government or in any judicial proceeding except as shown in findings 21 and 22, including the Tax Court of the United States, except that on or about March 29, 1951, on the application of John F. Lang as ancillary receiver for the Contractor in bankruptcy, a temporary injunction was issued in the District Court of the United States for the District of New Mexico enjoining and restraining C. E. McNeeley, Finance Officer of the Atomic Energy Commission, and J. A. Abbott, Disbursing Officer of the United States of America, from making any payments on account of any contracts with the said bankrupt otherwise than into the Eegistry of the said Court, or delivering any check on account of any such contract otherwise than into the Eegistry of said Court.
12. The third party defendant, First National Bank in Houston, is a national bank, duly organized under the Acts of Congress of the United States of America, with its principal place of business in Houston, Harris County, Texas.
13. On January 30, 1950, Thomas Bryan and Associates, Inc., a corporation, executed notice of assignment of accounts pursuant to Art. 260-1, Texas Civil Statutes, as follows:
*737 The State op Texas 1 County op Harris J
Notice is hereby given: That the undersigned has assigned and intends to assign to First National Bank of Houston, a national banking corporation domiciled in Houston, Harris County, Texas, whose mailing address is 201 Main Street, Houston 2, Texas, and the First National Bank of Santa Fe, New Mexico, one or more accounts receivable, as more particularly set forth in the assignment in writing, made, executed and delivered by said assignor to said bank, and in such other assignments as shall from time to time be made, executed and delivered by said assignor to said bank.
The mailing address of the assignor is M & M Building, Houston, Texas.
The legal residence of the assignor in the State of Texas is at Houston, Texas.
The principal office of the assignor in the State of Texas is at Houston, Texas.
Said assignor has only the following other places of business within the State of Texas:_
-, Texas.
This notice of assignment shall be effective for a period of three years from its date.
In witness whereof, the said assignor has executed these presents at Houston in the State of Texas, this Jan. 30, 1950.
Thomas Bryan and Associates, Inc. by /s/ Robert W. Hasty, Treas. by /s/ Charles C. Hebing, V. P.
The State op Texas County op Harris
Before me, the undersigned authority, a Notary Public in and for said County and State, personally appeared Robert W. Hasty and Charles 0. Hebing, known to me to be the person whose name is subscribed to the foregoing instrument in writing and acknowledged to me that he excuted the same for the purposes and consideration therein expressed and in the capacity therein stated.
In witness whereof, I have hereto set my hand and seal of office this Jan. 30,1950.
/s/ James B. Thomas Notary Public in and for Harris County, Texas.
*738 This notice of assignment was filed of record in the office of the County Clerk of Harris County, Texas, on January 30, 1950, being instrument No. 220416, entered in the Chattel Mortgage Register, Vol. 410, Page 75.
14. The pertinent provisions of Article 260-1 of the Texas Civil Statutes are as follows:
Section 1. Definitions: In this Act unless the context otherwise requires:
(1) “Account” or “account receivable” means an existing or future right to the payment of money presently due, or to become due (a) under an existing contract; (b) which right to payment is not secured by a chattel mortgage, a conditional sale contract, or other instrument which may be filed for record in a public office of this or another state of the United States and which instrument was given at or before the time the account was assigned and reserves the title to, or creates, a lien upon, goods, the sale of which gave rise to the account; and (c) which right to payment is not represented by (A) a judgment,. (B) a negotiable instrument, or (C) a non-negotiable instrument which so represents the obligation that an assignee who takes possession of it takes rights superior to those of a prior assignee of the obligation who did not take possession of the instrument; and (d) the assignment of which right is not subject to special statutory provisions of the state or of the Federal Government relative to the rights of creditors of the assignor or to successive assignees from the assignor.
(2) “Assignee”, “assignment”, “assignor”, and “debtor” are limited respectively to an assignee, assignment, assignor of, and debtor on an account receivable.
(8) “Contract” includes express contracts, written or oral, and implied contracts, such as an obligation to pay for goods received or services rendered without an express contract.
(4) “Assignment” means any transfer of an account, other than by operation of law, including but not limited to a transfer as security, the creation by agreement of a lien on an account, and sales of accounts.
Sec. 2. The assignment of any account or accounts may be protected by the execution and delivery by the assignor to the assignee of an instrument or instruments in writing, assigning such account or accounts and describing the account or accounts assigned with sufficient particularity to identify the same, and by the filing for record the “Notice of Assignment” as hereinafter provided for.
*739 Sec. 6. Whenever any person, firm or corporation shall in good faith take a protected assignment of any account or accounts, which shall not have been satisfied, cancelled, or released by the assignor, all creditors of, and all subsequent assignees, purchasers and transferees of or from the assignor shall be conclusively deemed to have received notice of such assignment, dating from the time of the filing for record of the notice of assignment hereinabove provided; and after such filing for record, no purchaser from the assignor, no creditor of any kind of the assignor, and no prior or subsequent assignee or transferee of the assignor, holding an assignment not protected, or holding an assignment under a notice of assignment subsequently filed for record, shall in any event have, or be deemed to have acquired, any right in the account or accounts so assigned or in the proceeds thereof, or in any obligation substituted therefor, superior to the rights therein of the assignee named in such prior protected assignment.
*****
15. On December 22,1950, the third party defendant (hereinafter sometimes referred to as the bank) loaned and paid over to said Thomas Bryan and Associates, Inc. the sum of $125,000.00 evidenced by its promissory note of said date; that there is a balance due on said note in the amount of $109,005.42 with interest at the rate of 5% per annum from December 22, 1950. The bank at various times between January 30, 1950 and February 23, 1951, loaned and advanced funds to Thomas Bryan and Associates, Inc., of which there remains unpaid the amount of $302,730.78.
16. On December 22, 1950, simultaneously with execution of the above described note, said Thomas Bryan and Associates, Inc., executed an assignment to the bank of Invoice No. H-285, Contract No. AT (29-l)-994 directed to United States Atomic Energy Commission, Office of Santa Fe Operations, Los Alamos, New Mexico, by said Thomas Bryan and Associates, Inc., dated December 18,1950, in the amount of $161,902.33 as security for repayment of the above described note.
17. On January 21,1951, the said Thomas Bryan and Associates, Inc., pursuant to the Assignment of Claims Act of 1940 (Title 31, Sec. 203 (U. S. C. A.) and to the provisions of Article 24 (a) (b) of the aforementioned Contract No. AT *740 (29-1)-994, assigned to the bank all moneys due and to become due to said Thomas Bryan and Associates, Inc. under said Contract, and authorized and directed defendant to pay to the order of the bank all sums payable to the defendant under said Contract, as the same became due thereunder, and gave the bank full power and authority to collect and receive same.
18. Notice of said Assignment, pursuant to the Assignment of Claims Act of 1940, described above (finding 17), together with a true copy of the instrument of assignment, was mailed to General Accounting Office, Washington, D. C., under date of January 21, 1951, receipt of which was acknowledged by O. L. Voorhees for Chief, Contract Service Section, General Accounting Office at 3:30 P. M. February 6,1951; and
Notice of said assignment pursuant to the Assignment of Claims Act of 1940 described above (finding 17), together with a true copy of the instrument of assignment, was mailed to Treasury Disbursing Agent, Albuquerque, New Mexico, under date of January 21,1951, receipt of which was acknowledged by J. A. Abbott, Begional Disbursing Office, at 9:00 A. M. on February 5,1951; and
Notice of said assignment, pursuant to the Assignment of Claims Act of 1940, described above (finding 17), together with a true copy of the instrument of assignment, was mailed to C. L. Tyler, Contracting Officer, Los Alamos, New Mexico, under date of January 21, 1951, receipt of which was acknowledged by James J. Bose, Acting Director, Of. of Engr. & Contr. on behalf of B. E. Cole, Contracting Officer, U. S. Atomic Energy Commission, Los Alamos, New Mexico, at 2:30 P. M. on February 5,1951; and
Notice of said assignment, pursuant to the Assignment of Claims Act of 1940, described above (finding 17), together with a true copy of the instrument of assignment, was mailed to National Surety Corporation, Busk Building, Houston 2, Texas, under date of January 21,1951, receipt of which was acknowledged by A. J. Beid, Ass’t Secretary on behalf of National Surety Corporation, 4 Albany Street, New York, New York, at 9:00 A. M. on February 8, 1951, as set forth in Paragraph 10.
*741 Article 24 (a) (b), Assignment of Eights, of the aforementioned Contract, provides:
(a) Claims for monies due or to become due the contractor from the Government under this contract may be assigned to a bank, trust company or other financing institution, including any Federal lending agency. Any such assignment shall cover all amounts payable under this contract and not already paid, and shall not be made to more than one party, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing.
(b) In the event of any such assignment the assignee shall file four signed copies of a written notice of the assignment, together with one copy of the instrument of assignment, with each of the following:
(I) General Accounting Officer.
(Ill The Contracting Officer.
(III) The surety or sureties upon the bond or bonds, if any, in connection with this contract.
(IV) The officer designated in this contract to make payments thereunder.
19. Unpaid loans from the bank to Thomas Bryan and Associates, Inc., were in existence at the time of said assignment set forth in finding 17, and other loans to Thomas Bryan and Associates, Inc., were made by the bank thereafter, but no loan was so made at the time said assignment was executed.
20. Neither the plaintiff nor the First National Bank in Houston has made any assignment of their claim to the un-expended balance of said contract or the moneys due thereunder except to the extent that the facts stated in findings 21 and 22 may constitute an assignment by the plaintiff.
21. On February 9,1958, the United States District Court for the Southern District of New York made an order approving the compromise between the Fidelity and Deposit Company of Maryland, National Surety Corporation and John F. Lang, as Trustee of Thomas Bryan and Associates, Inc., bankrupt.
22. Pursuant to this order, on February 9, 1953, John F. Lang, as Trustee, Eeceiver and Ancillary Eeceiver of Thomas Bryan and Associates, Inc., executed an assignment to the plaintiff, National Surety Corporation, of all of its rights against the defendant.
*742 FINDINGS RELATING TO CLAIM OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND NO. 149-53
23. The plaintiff, Fidelity and Deposit Company of Maryland, is a corporation duly organized under the laws of the State of Maryland, and is authorized to carry on the business of Surety in all the states of the United States and the District of Columbia.
24. On or about November 29, 1949, Thomas Bryan and Associates, Inc., hereinafter referred to as the Contractor, duly entered into a contract with the United States of America, through the United States Atomic Energy Commission, hereinafter called the Government, for the construction of a steam and electric plant in Area TA-3, Los Alamos, New Mexico, known as Contract No. AT (29-1)-838, at an estimated price of $1,665,236.00, the final contract price of which was adjusted by modification to $1,705,295.55.
25. At or about the time of the execution of the said contract and in compliance with the Miller Act, 40 U. S. C. 270a, c. 642, Sec. 1,49 Stat. 793, the Contractor, as Principal, and the plaintiff, as Surety, executed two bonds to the Government, each in the penal sum of $832,618.00, one of said bonds to secure the performance of said contract and the other of said bonds to secure the payment to all persons supplying labor and materials in the prosecution of the work provided for in said contract.
26. In consideration of the premium in the sum of $16,-652.36 and the application and indemnity agreement dated on or about December 1, 1949, the plaintiff executed the aforesaid bonds, and under said application and indemnity agreement the Contractor agreed, in part, as follows:
The undersigned does or hereby do represent that the statements made herein as an inducement to the Fidelity and Deposit Company of Maryland (hereinafter called Company) to execute or procure the bond or bonds herein applied for, are true, and should the Company execute or procure said bond or bonds, does or do hereby agree, for the undersigned, the heirs, personal representatives and assigns of the undersigned, jointly and severally, as follows:
*743 Second : to indemnify the Company against all loss, costs, damages, expenses and attorneys’ fees whatever, and any and all liability therefor, sustained or incurred by the Company by reason of executing of said bond or bonds, or any of them, in making any investigation on account thereof, in prosecuting or defending any action brought in connection therewith, in obtaining a release therefrom, and in enforcing any of the agreements herein contained.
Thikd : that the Company shall have the right, and is hereby authorized but not required:
(a) In the event of any abandonment or forfeiture of the contract guaranteed by said contract bond or of any breach of said contract bond, to take possession of the work under said contract, and at the expense of the undersigned to complete, or to contract for the completion of, the same, or to consent to the re-letting or completion thereof by the obligee in said contract bond;
(b) to adjust, settle or compromise any claim, demand, suit or judgments upon said bond, 01 bonds, or any of them, unless the undersigned shall request the Company to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Company, at the time of such request, cash or collateral satisfactory to it in kind and amount, to be used in paying any judgment or judgments that may be rendered, with interest, costs and attorney’s fees. ■* * *
Fourth: to assign, transfer and set over and does and or do hereby assign, transfer and set over to the Company, as collateral, to secure the obligations herein and any other indebtedness and liabilities of the undersigned to the Company, whether heretofore or hereafter incurred, such assignment to become effective as of the date of said contract, but only in the event of (1) any abandonment, forfeiture or breach of said contract, or of any breach of said bond or bonds, or any of them, or of any other bond or bonds executed or procured by the Company on behalf of the undersigned; or (2) of any breach of the agreements herein contained; or (3) of a default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the undersigned for the benefit of creditors, or of the appointment, or of any application for the appointment of a receiver or trustee for the undersigned, whether insolvent or not; * * *
(b) All the rights of the undersigned in, and growing in any manner out of, said contract, or any extensions, *744 modifications, changes or alterations thereof or additions thereto, or in or growing in any manner out of said bond or bonds, or any of them; * *
(d) Any and all percentages retained on account of said contract and any and all sums that may be due under said contract at the time of such abandonment, forfeiture or breach, or that thereafter may become due; * * *
Fifth: that liability hereunder shall extend to, and include the full amount of any and all sums paid by the Company in settlement or compromise, in good faith, of liability, loss, costs, damages, expenses and attorneys’ fees, claims, demands, suits and judgment as aforesaid; an itemized statement thereof, sworn to by any officer of the company, or the voucher or vouchers or other evidence of such payment, settlement or compromise shall be prima facie evidence of the fact and extent of the liability of the undersigned, in any claim or suits hereunder, and in any and all matters arising between the undersigned and the Company.
27. The Contractor proceeded with the work and prosecuted the same until February 23,1951.
28. On February 23, 1951, the Contractor stopped work under said contract.
29. Upon the default of the Contractor, the Government relet the work for completion to E. C. Pritchett Co. under Contract No. AT (29-1)-1149 in the sum of $83,418.56, to Wills Electric Company under Contract No. AT (29-1)-1158, in the sum of $87,363.00 and to W. D. Gunnells Co. under Contract No. AT (29-l)-1188, in the sum of $21,840 in the total sum of $192,621.56.
30. The Contractor was indebted to the Government in the sum of $11,764.78 for miscellaneous items arising out of the Contractor’s operations under Contract No. AT (29-1)-838 as follows:
Materials and Services furnished-$1,891.45
Rental for White Rock Housing assigned to contractor under this contract_ 9,459.40
Utilities furnished for contractor’s office at Los Alamos (prorated between this contract and Contract No. AT (29-1)-994)_ 31.08
Rental for White Rock Housing held by contractor (prorated) _ 146.25
*745 AEO communications service account (unpaid telephone bills prorated)_ $182.49
Medical services furnished by Los Alamos Medical Center to contractor’s employees for job incurred injuries (prorated) _ 54.11
31. Thomas Bryan and Associates, Inc., the Contractor, is indebteded to the Government in the amount of $45,429.58 for withholding taxes for the fourth quarter of 1950, and Federal Unemployment Taxes for the years 1949 and 1950, including interest to the date of the filing of the bankruptcy petition, to wit, February 24, 1951. Check No. 825 payable to the Collector of Internal Bevenue drawn on the First National Bank in Houston in the amount of $42,106.26 was issued on January 31,1951, but was returned on account of insufficient funds. The records of the contractor showing the breakdown of said amount are appended to the stipulation of facts as Exhibit D.
32. The Government made payment to the Contractor in the sum of $1,434,992.60.
33. The Contractor was indebted to the Government in the sum of $7,083.13 arising out of the Contractor’s operations under Contract No. AT (29-l)-994 as follows: $4,780.77 for miscellaneous small claims, and $2,302.36 cost of replacing certain vitrified clay pipe.
34. At the date of the Contractor’s default, February 23, 1951, there had been assessed by the Government liquidated damages arising out of Contract No. AT (29-1)-838 in the amount of $63,075.00, computed as follows:
(1) No. 1 Turbo-Generator Unit to be completed November 1, 1950; delay from November 2, 1950 to February 23, 1951.
114 days @ $400 per day-$45,600
(2) No. 2 Turbo-Generator Unit to be completed December 1, 1950; delay from December 2, 1950 to February 23, 1951.
84 days @ $200 per day-$16,800
(3) Telephone cable facilities to be completed August 1, 1950; were completed August 28,1950.
delay of 27 days @ $25 per day- $675
Total. $63,075
*746 The total liquidated damages assessed by the Government against the Contractor on Contract No. AT (29-1)-838 in the amount of $103,476.00 for delays in the completion of said contract were computed as follows:
(1) The No. 1 Turbo-Generator Unit was accepted under contract AT (29-1)-1149 as of April 25, 1951. This is an over-run in time of 175 days (Nov. 2,1950 to April 25,1951). The liquidated damages for this unit were assessed for 175 days @ $400.00 per day amounting to a total of $70,000.00.
(2) The No. 2 Turbo-Generator Unit was accepted under Contract AT (29-1)-1149 as of May 14, 1951. This is an over-run in time of 164 days (Dec. 2,1950 to May 14,1951). The liquidated damages for this unit were assessed for 164 days @ $200.00 per day amounting to a total of $32,800,00.
(3) The telephone cable facilities were completed as of August 28, 1950. This is an over-run in time of 27 days (Aug. 2, 1950 to Aug. 28, 1950). The liquidated damages for this installation were assessed for 27 days @ $25.00 per day amounting to a total of $675.00.
35. Creditors of the Contractor who had furnished labor and materials in connection with the performance of the said contract were unpaid for their work and materials supplied in the prosecution of the contract work in the sum of $341,769.86 and made demand upon the plaintiff for the payment thereof and that by reason thereof the plaintiff was compelled to accept liability therefor and pay, in accordance with its obligation of its said payment bond, sums aggregating $341,769.86 to the creditors of the Contractor in settlement of claims for labor and materials supplied the Contractor in the prosecution of the work provided for in said contract, no part of which sum has been refunded or paid to the plaintiff by the Contractor or anyone else.
36. No action on the claim asserted herein has been taken by Congress, or by any Department of the Government or in any judicial proceeding except as shown in findings 45 and 46, including the Tax Court of the United States, except that on or about March 29, 1951 on the application of John F. Lang, as ancillary receiver for the Contractor in bankruptcy, a temporary injunction was issued in the District Court of the United States for the District of New Mexico *747 enjoining and restraining C. R. McNeeloy, Finance Officer of the Atomic Energy Commission, and J. A. Abbott, Disbursing Officer of the United States of America, Atomic Energy Commission from making any payments on account of any contracts with the said bankrupt otherwise than into the Registry of the said Court, or delivering any check on account of any such contract otherwise than into the Registry of said Court.
37. The Intervenor in this case, First National Bank in Houston, is a national bank, duly organized under the Acts of Congress of the United States of America, with its principal place of business in Houston, Harris County, Texas.
38. The Intervenor, First National Bank in Houston, at various times between January 30, 1950 and February 23, 1951, loaned and advanced funds to Thomas Bryan and Associates, Inc., of which there remains unpaid the amount of $302,730.78.
39. On January 30, 1950, Thomas Bryan and Associates, Inc. executed notice of assignment of accounts pursuant to Art. 260-1, Texas Civil Statutes. (See finding 13.)
40. On January 21,1951, the said Thomas Bryan and Associates, Inc., pursuant to the Assignment of Claims Act of 1940 (Title 31, Sec. 203, U. S. C. A.) and to the provisions of Article 24 (a) (b) of the aforementioned Contract No. AT (29-1)-838, assigned to the Intervenor all moneys due and to become due to said Thomas Bryan and Associates, Inc. under said Contract and authorized and directed defendant to pay to the order of Intervenor all sums payable by the defendant under said Contract, as the same become due thereunder, and gave Intervenor full power and authority to collect and receive same.
41. Notice of said assignment, pursuant to the Assignment of Claims Act of 1940, described above (finding 40), together with a true copy of the instrument of assignment, was mailed to the General Accounting Office, Washington, D. C. under date of January 21,1951, receipt of which was acknowledged by O. L. Voorhees for Chief, Contract Service Section, General Accounting Office at 10:00 A. M. February 6,1951; and
*748 Notice of said assignment pursuant to the Assignment of Claims Act of 1940 described above (finding 40), together with a true copy of the instrument of assignment, was mailed to Treasury Disbursing Agent, Albuquerque, New Mexico, under date of January 21, 1951, receipt of which was acknowledged by J. A. Abbott, Regional Disbursing Office, at 9: 00 A. M. on February 5,1951; and
Notice of said assignment, pursuant to the Assignment of Claims Act of 1940, described above (finding 40), together with a true copy of the instrument of assignment, was mailed to C. L. Tyler, Contracting Officer, Los Alamos, New Mexico, under date of January 21, 1951, receipt of which was acknowledged by James J. Rose, Acting Director, Of. of Engr. & Constr. on behalf of R. E. Cole, Contracting Officer, TJ. S. Atomic Energy Commission, Los Alamos, New Mexico, at 2:30 P. M. on February 5,1951; and
Notice of said assignment, pursuant to the Assignment of Claims Act of 1940, described above (finding 40), together with a true copy of the instrument of assignment, was mailed to Fidelity and Deposit Company of Maryland, City National Bank Building, Houston 2, Texas, under date of January 21, 1951, receipt of which was acknowledged by E. B. McCahan, Jr., Vice-President, on behalf of Fidelity and Deposit Company of Maryland, 606 Fidelity Building, Baltimore 3, Maryland, at 2:00 P. M. on February 5,1951, subject to the reservation by the plaintiff of all its rights, equity or priorities whether by agreement, subrogation or common law or statute law.
Article 24 (a) (b), Assignment of Eights, of the aforementioned General Contract, provides:
(a) Claims for monies due or to become due the contractor from the Government under this contract may be assigned to a bank, trust company or other financing institution, including any Federal lending agency. Any such assignment shall cover all amounts payable under this contract and not already paid, and shall not be made to more than one party, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing.
(b) In the event of any such assignment the as-signee shall file four signed copies of a written notice *749 of the assignment, together with one copy of the instrument of assignment, with each of the following:
(I)General Accounting Office.
(II)The Contracting Officer.
(Ill)The surety or sureties upon the bond or bonds, if any, in connection with this contract.
(IV)The officer designated in this contract to make payments thereunder.
42. The pertinent provisions of Article 260-1 of the Texas Civil Statutes are set forth in finding 13.
43. Unpaid loans from Intervenor Bank to Thomas Bryan and Associates, Inc. were in existence at the time of said assignment set forth in finding 40, and other loans to Thomas Bryan and Associates, Inc. were made by Intervenor Bank but no loan was so made at the time said assignment was executed.
44. Neither the plaintiff nor the intervenor have made any assignment of their claims to the unexpended balance on said contract or the money due thereunder except to the extent that the facts stated in findings 45 and 46 may constitute an assignment by the plaintiff.
45. On February 9,1953, the United States District Court for the Southern District of New York made an order approving the compromise between the Fidelity and Deposit Company of Maryland, National Surety Corporation and John F. Lang, as Trustee of Thomas Bryan and Associates, Inc., bankrupt.
46. Pursuant to the above order, on February 9,1953, John F. Lang, as Trustee, Beceiver and Ancillary Beceiver of Thomas Bryan and Associates, Inc., executed an assignment to the plaintiff, Fidelity and Deposit Company of Maryland of all his rights against the defendant.
EINDINGS, BASED UPON STIPULATION, OP GENERAL APPLICATION TO CLAIMS NOS. 419-52 AND 419-53
47. On June 16, 1954, the plaintiffs National Surety Corporation and Fidelity and Deposit Company of Maryland and the third party defendant, intervenor, First National Bank in Houston, submitted to the Attorney General an offer to compromise these actions insofar as the United States is *750 concerned. Said offer of compromise was on September 7, 1954, duly accepted.
48. Plaintiffs and First National Bank in Houston agree and the court finds that defendant is justly entitled to the sum of $45,429.58 as taxes owing to defendant by the bankrupt contractor, Thomas Bryan and Associates, Inc., said taxes to be apportioned between the amounts owing by defendant on Contracts No. AT (29-l)-838 and No. AT (29-1)-994, and that judgment may be entered for defendant herein in said amount and set off against the amount due and owing by defendant on account of said contracts, as hereinafter set forth.
49. In addition, plaintiffs and First National Bank in Plouston agree to waive their claims to recovery of (1) any part of the completion costs of Contract No. AT (29-1)-838 in the amount of $192,621.56, (2) $675.00 assessed by defendant as liquidated damages on Contract No. AT (29-1)-838, (3) $7,083.13, constituting miscellaneous charges arising out of the contractor’s operations under Contract No. AT (29-l)-994, and (4) $11,764.78, constituting miscellaneous charges arising out of contractor’s operations under Contract No. AT (29-1)-838.
50. Defendant agrees and the Court finds that there is due and unpaid, before deduction of the aforesaid $45,429.58 for taxes, on Contract AT (29-1)-838, the sum of $65,241.61, and on Contract No. AT (29-1)-994, the sum of $100,918.34, totalling $166,159.95. Defendant accordingly shall make a net aggregate payment of the sum of $120,730.37, which results from deducting said sum of $45,429.58 due and owing to defendant for taxes from said sum of $166,159.95 being the balance due and owing by defendant on account of said contracts. The defendant shall hold said net sum of $120,730.37 pending the determination in these proceedings of the respective rights of the plaintiffs and the First National Bank in Houston and the entry of an appropriate judgment by the Court determining such rights.
51. Plaintiffs, the First National Bank in Houston, and defendant have waived and abandoned any and all other claims heretofore asserted against each other touching any and all matters involved in these cases and each has agreed *751 to accept the amounts hereinabove set forth in full settlement hereof.
52. This compromise is in no way related to or concerned with the income or other taxes to which plaintiff or the First National Bank in Houston are now or may in the future become liable as a result of this settlement, or otherwise.
53. The parties have made this settlement and stipulations for the purpose of enabling the Court, after it determines the respective rights of the plaintiffs and First National Bank in Houston, to (1) enter judgment for the party or parties determined to have the superior rights, and against the defendant, in the sum of $166,159.95 in full settlement of all claims set forth in plaintiffs’ and third party defendant, intervenor’s petitions, as above set forth, (2) enter judgment for defendant and against the party or parties determined to have the superior rights, in the sum of $45,429.58 in full settlement of all claims set forth in defendant’s counterclaim, as hereinabove set forth, (3) set off the liability of the party or parties determined to have the superior rights against defendant’s liability, and to enter judgment in favor of the party or parties deemed to have the superior rights and against defendant for the net difference of $120,730.37. The parties agreed that in the event the stipulations are rejected in whole or in part by the Court, the entire stipulations should be void and of no effect whatsoever.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiffs National Surety Corporation and Fidelity and Deposit Company of Maryland are entitled to recover, and it is therefore adjudged and ordered that the National Surety Corporation may recover of and from the United States the sum of seventy-three thousand three hundred twenty-six dollars and thirty-nine cents ($73,326.39), and that the Fidelity and Deposit Company of Maryland may recover of and from the United States the sum of forty-seven thousand four hundred three dollars and ninety-eight cents ($47,403.98).
The petition of intervenor First National Bank in Houston is dismissed.